FILED

2015 SEP 30   AM 10: 14

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

JOHN T. HAYS, M.D.,

**Plaintiff,**

-vs-                                                          Case No.  A-15-CA-432-SS

HCA HOLDINGS, INC. and HCA PHYSICIAN
SERVICES, INC.,

**Defendants.**

---

# O R D E R

BE IT REMEMBERED on the 21st day of August 2015 the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel.  Before the Court are Defendants HCA Holdings, Inc. and HCA Physician Services, Inc.'s Opposed Amended Motion to Dismiss and Compel Submission to Pending Arbitration, or, in the Alternative, to Stay This Litigation [#21], Plaintiff John T. Hays, M.D.'s Response [#22] thereto, Defendants' [Corrected] Reply [#25] thereto, Plaintiff's Motion for Leave to File Sur Reply [#26],[1] and Plaintiff's Notice [#29] identifying case law.  Having considered the documents, the governing law, the arguments of the parties at hearing, and the file as a whole, the Court now enters the following opinion and orders.

## Background

This case involves the allegedly wrongful termination of Plaintiff John T. Hays, M.D., a cardiologist who suffers from epilepsy, by Defendants HCA Holdings, Inc. and HCA Physician Services, Inc., whom Hays alleges employed him in connection with his cardiology practice.  Hays

---

[1] Plaintiff's Motion for Leave to File Sur Reply [#26] is GRANTED.

brings claims against Defendants for violation of the Texas Commission on Human Rights Act (TCHRA), negligence, and breach of contract, alleging Defendants failed to provide him with reasonable accommodations for his epilepsy, negligently treated him in a manner that exacerbated his epilepsy, and ultimately terminated his employment because of his epilepsy in violation of their own policies. Alternatively, "in the case that Dr. Hays is not deemed to have been employed by Defendants," Hays brings a claim for tortious interference with at-will employment. *See* Second Am. Compl. [#20] ¶¶ 33–40.

Defendants seek an order dismissing this suit and compelling Hays to submit his claims to arbitration, arguing Hays's claims in this action are derived from Hays's employment contract with Austin Heart, PLLC (Austin Heart) and are in essence the same claims Hays is asserting against Austin Heart and Capital Area Cardiology (CAC) in a presently pending arbitration. As set forth below, the Court agrees Hays's claims should be arbitrated, and consequently, dismisses this case and compels Hays to arbitrate.

A.      **Hays's Factual Allegations**

In general, Hays alleges that between 2011 and 2013, although Defendants knew Hays had epilepsy and that his condition could be exacerbated by excessive stress, Defendants and their "agents and representatives" failed to accommodate Hays's requests for a limited workload and reduced office hours, causing Hays to suffer an increased number of stress-related seizures. *Id.* ¶ 11. Hays further claims "agents and representatives" of Defendants punished Hays for his disability by taking away Hays's authorizations to perform certain medical procedures. *Id.* ¶ 12. According to Hays, Defendants' wrongful conduct culminated when, after Hays experienced an increased amount

of seizure activity during a two-day period in December 2013, Defendants placed Hays on administrative leave, then terminated his employment in January 2014. *Id.* ¶¶ 14–15.

Hays alleges he "was an at-will employee of Defendants because, among other things, Defendants provided Dr. Hays's medical malpractice insurance" and "were involved in and made key employment decisions related to Dr. Hays," including the decision to fire him. Hays also claims the "HCA Code of Conduct and Ethics and Compliance Program," a document Hays was required to sign, constitutes a binding contract between himself and HCA Holdings. *Id.* ¶ 10. Among other standards, the Code of Conduct states that "HCA is an equal opportunity workforce," that "no one shall discriminate against any individual with regard to . . . disability," and that HCA will "make reasonable accommodations to the known physical and mental limitations of qualified individuals with disabilities." Resp. [#22] Ex. C (Code of Conduct) at 37. According to Hays, Defendants violated the Code of Conduct by failing to accommodate his epilepsy and by terminating his employment. Second Am. Compl. [#20] ¶¶ 16, 30–32.

**B.      The State Court Suit, Hays's "Physician Employment Agreement," and the Pending Arbitration**

On January 5, 2015, Hays initiated what would ultimately become this action by filing suit against Austin Heart, CAC, and HCA Holdings[2] in the 53rd Judicial District Court of Travis County, Texas, asserting claims for violations of the TCHRA and negligence. *See* Mot. Dismiss [#21-3] Ex. 3 (Orig. Pet.). Hays's state court petition also sought a declaratory judgment that Hays's "Physician

---

[2] Hays initially improperly named HCA Holdings as "Hospital Corporation of America" in the state court suit. *See* Resp. [#22] Ex. K (Verified Denial). According to Defendants, Hays subsequently amended his state court petition to replace "Hospital Corporation of America" with HCA Holdings. *See* Mot. Dismiss [#21] ¶ 14.

Employment Agreement," to which Austin Heart, CAC, and Hays were signatories, was not a valid and enforceable contract. *See id.* ¶¶ 31–34; *id.* [#21-2] Ex. 2 (Physician Emp't Agmt.).

The Physician Employment Agreement, which is dated November 30, 2009, provides that any "controversy or claim arising out of or related to" the Agreement will be submitted to mandatory, binding arbitration before the American Health Lawyers Association (AHLA). Physician Emp't Agmt. ¶ 9(O). Relying on the Physician Employment Agreement's arbitration clause, Austin Heart and CAC—but not HCA Holdings—moved the state court to dismiss Hays's claims and compel arbitration before the AHLA. On March 10, 2015, the state court granted the motion to dismiss and compel arbitration, stating in a handwritten notation it was doing so "because there is no question of contract formation." *See* Mot. Dismiss [#21-4] Ex. 4 (State Court Order of Mar. 10, 2015).

An arbitration proceeding among Hays, Austin Heart, and CAC involving both (1) Hays's state court claims and (2) Austin Heart and CAC's breach-of-contract claims against Hays is presently pending before the AHLA (the Arbitration).[3] On April 13, 2015, Hays filed a motion to dismiss in the Arbitration, arguing (among other things) that there is no basis for arbitral jurisdiction because the Physician Employment Agreement is not a valid and enforceable contract. *See* Resp. [#22] Ex. B (Arbitration Mot. Dismiss) at 20. As of August 3, 2015, Hays's motion to dismiss remained pending before the arbitrator. *See id.* at 4.

Although Austin Heart and CAC were dismissed from the state court action pursuant to the state court's March 10, 2015 Order, Hays continued to litigate the suit against HCA Holdings, and

---

[3] The procedural history of the arbitration proceeding is not entirely clear from the record. It appears Austin Heart and CAC served Hays with two different arbitration demands: the first was served on December 3, 2014, *see* Mot. Dismiss [#21] ¶ 12, and the second was served on March 11, 2015, *see id.* ¶ 16. It appears only the first proceeding, AHLA No. 2748, remains pending at this time. *See id.* [#21-5] Ex. 5 (First Am. Answer & Counter-Demand) at 4 ¶¶ 17–18; *id.* at 12–15 ¶¶ 15–35 (responding, in AHLA No. 2748, to Austin Heart and CAC's breach-of-contract allegations and serving a counter-demand for discrimination, negligence, and declaratory judgment).

on April 15, 2015, amended his state court petition to add HCA Physician Services as a defendant. *See* Mot. Dismiss [#21] ¶ 17; Resp. [#22] at 4.  On May 21, 2015, Defendants removed the state court suit to this Court.  *See* Notice Removal [#1].  Hays filed his first amended complaint on June 2, 2015, which dropped his claim for declaratory judgment and added a claim, pled in the alternative, for tortious interference with "existing contract."  *See* First Am. Compl. [#12] at 5–6.  On July 23, 2015, Hays filed his second amended complaint, which added a claim for breach of contract and restated his tortious interference claim as with "at-will employment" rather than "existing contract." *See* Second Am. Compl. [#20] at 6.

The instant motion to dismiss and compel arbitration followed.

## Analysis

## I.      Legal Standard—Motion to Compel Arbitration

In determining the arbitrability of a dispute, this Court is guided by "four general principles" enunciated by the United States Supreme Court. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).  First, because arbitration is a creature of contract, "'a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).  Second, the threshold question of whether the parties agreed to arbitrate is one for the courts, not the arbitrator, unless "the parties clearly and unmistakably provide otherwise." *Id.*  Third, this Court is not to consider the merits of the claims in determining arbitrability. *Id.*  Fourth, "'where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Id.* (quoting *AT&T Techs.*, 475 U.S. at 650).  The presumption of arbitrability requires this Court to resolve any ambiguities as to the scope of the arbitration agreement in favor of arbitration. *Id.*

-5-

Mindful of these guiding principles, this Court conducts a two-step analysis in deciding whether to compel arbitration under the Federal Arbitration Act. *Id.* The first step is to "determine whether the parties agreed to arbitrate the dispute in question." *Id.* This step involves two inquiries: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.* (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). The second step is to "determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.*

## II.    Application

Defendants argue Hays's claims in this action are subject to mandatory arbitration pursuant to the arbitration clause in the Physician Employment Agreement. Defendants argue that although they are nonsignatories to the Agreement, Hays's claims against Defendants, all of which allegedly concern the terms and conditions of Hays's employment, arise out of or relate to the Agreement, and thus must be arbitrated. Additionally, Defendants argue, although Hays's breach-of-contract claim is purportedly based on the Code of Conduct, Defendants argue (1) there is no private cause of action to enforce a corporate Code of Conduct and (2) even if there were such a cause of action, the breach-of-contract claim would be subject to arbitration because, like Hays's other claims, it is based on Hays's allegedly wrongful termination for which he is entitled to a single damage recovery.

Hays responds arbitration is inappropriate because all of his claims "are based on his employment with Defendants and the contractual provisions found in Defendants' own policies"—the Code of Conduct—"not on any agreement containing an arbitration provision." Resp. [#22] at 1. In other words, it is Hays's position that all of his claims arise from the Code of Conduct, not the Physician Employment Agreement. *See id.* at 7 ("Defendants' entire motion is based on a

mischaracterization of Dr. Hays's claims . . . .  There is no contract between Defendants and Dr. Hays that contains an arbitration provision and Dr. Hays has not sued Defendants based on any such contract.").  Hays concludes arbitration is improper because Defendants have failed to carry their burden to prove the existence of a valid agreement to arbitrate.

As noted, Defendants did not sign the Physician Employment Agreement.  Since Defendants are not bound by the terms of an agreement they did not agree to or sign, other facts must obtain to require arbitration of Hays's claims against Defendants.  The question whether a nonsignatory can be bound to, or permitted to enforce, an arbitration agreement is one for the court, not the arbitrator, and the party seeking arbitration bears the burden to establish the arbitration agreement applies.[4]  *See G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 524 (Tex. 2015); *see also Glassell Producing Co. v. Jared Res., Inc.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.) (citing *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 776 (Tex. App.—Beaumont 2008, orig. proceeding [mand. denied]) (per curiam)).  Thus, Defendants bear the burden to establish they have a legal right to enforce the arbitration clause in the Physician Employment Agreement as against Hays.

Attempting to carry that burden, Defendants argue Hays's claims must be sent to arbitration under an equitable estoppel theory.  Equitable estoppel is one of the six theories recognized in Texas under which a nonsignatory to an agreement can be bound to, or permitted to enforce, an arbitration

---

[4] The question whether a nonsignatory to an agreement can be bound by an arbitration clause in that agreement is one of state law.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (explaining the Federal Arbitration Act does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)" and holding the lower court's finding "that nonparties to a contract are categorically barred from . . . relief was error"); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014) (applying *Carlisle* and finding state law applies to the question whether a nonsignatory may enforce an agreement to arbitrate).  Thus, Texas law applies here.

clause in that agreement. *G.T. Leach*, 458 S.W.3d at 524 (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (recognizing nonsignatory may be bound under theories of "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary")).  Under an equitable estoppel theory, "'a litigant who sues based on a contract subjects him or herself to the contract's terms . . . , including [an] [a]rbitration [provision].'" *Id.* at 527 (quoting *In re FirstMerit Bank*, 52 S.W.3d 749, 755 (Tex. 2001)).

Federal courts recognize several species of equitable estoppel that can be used by a nonsignatory seeking to compel a signatory to arbitration. *See Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002) (explaining a nonsignatory may compel arbitration where the signatory relies on the written agreement in asserting his claims or "raises allegations of substantially interdependent and concerted misconduct" between the nonsignatory and at least one signatory).  The Texas Supreme Court, however, has expressly recognized one such species—the "direct-benefits" theory[5]—expressly rejected another—the "concerted-misconduct" theory—and has implied a third might be viable under Texas law—the "intertwined-claims" theory. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192–94 (Tex. 2007).

---

[5] Applying Delaware law but citing to two decisions from the Fifth Circuit, one federal court in this District recently stated that "[d]irect-benefits estoppel is a separate legal doctrine from equitable estoppel with a different legal standard." *Duncan v. Banks*, Civil No. SA-15-CV-148-XR, 2015 WL 5511253, at *13 (W.D. Tex. Sept. 16, 2015) (comparing *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010), with *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000) and stating the two cases apply different legal standards); *id.* at *11 ("The Delaware law of equitable estoppel as applied to arbitration is lifted directly from *Grigson v. Creative Art[ist]s Agency*, a Fifth Circuit case."). The *Duncan* court described the Fifth Circuit's *Grigson* decision as articulating the legal standard for "equitable estoppel," and its *Noble Drilling* decision as articulating the legal standard for "direct-benefits estoppel." *See id.* at *13. The Texas Supreme Court, however, has characterized the *Grigson* decision as describing two types of equitable estoppel—one of which is "direct-benefits" estoppel, *see Merrill Lynch*, 235 S.W.3d at 192–93—and treats direct-benefits estoppel as a species of equitable estoppel. *See, e.g., Rachal v. Reitz*, 403 S.W.3d 840, 846 n.5 ("Direct benefits estoppel . . . is a type of equitable estoppel."). As Texas law applies, the Court follows the law as set forth by the Texas Supreme Court.

Here, as Defendants argue both the direct-benefits and intertwined-claims theories apply, the Court examines the applicability of each in turn. Under the direct-benefits theory, the Court finds while Defendants may not compel Hays to arbitrate his TCHRA, negligence, or breach-of-contract claims, they may compel Hays to arbitrate his tortious interference claim. Turning to the intertwined-claims theory, the Court finds Defendants may compel Hays to arbitrate his TCHRA, negligence, and breach-of-contract claims. Consequently, the Court finds all of Hays's claims must be arbitrated, and dismisses the case with prejudice.

## A.      Direct-Benefits Estoppel

Under Texas law, "direct-benefits estoppel" may be used by a nonsignatory to estop a signatory claimant from denying the applicability of an arbitration provision when the claimant seeks "direct benefits" under the contract that contains the arbitration agreement. *Id.* (citing *Kellogg*, 166 S.W.3d at 739). "'Whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading.'" *Id.* (quoting *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005)). It is not enough that the party's claim relates to the contract; rather, the party must seek a benefit that stems directly from the contract. *Id.* (citing *Kellogg*, 166 S.W.3d at 741). In other words, the claim must "depend on the existence of the contract, and be unable to stand independently without the contract," and the defendant's alleged liability must "arise[] solely from the contract or must be determined by reference to it." *Id.* at 527–28 (citing *Meyer*, 211 S.W.3d at 307; *Kellogg*, 166 S.W.3d at 739–40; *Weekley Homes*, 180 S.W.3d at 132). Conversely, "'when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, rather than from the contract, direct benefits estoppel does not apply, even if the claim refers to or relates

to the contract." *Id.* at 528 (citing *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009)) (footnote omitted). Thus, the key questions here are whether Hays's claims for (1) wrongful termination in violation of the TCHRA, (2) negligence, (3) breach of contract, and (4) "tortious interference with at-will employment" depend on the existence of, and whether Defendants' alleged liability for Hays's claims arises solely from, the Physician Employment Agreement.

Hays's TCHRA wrongful-termination claim and his negligence claim do not depend upon the existence of the Physician Employment Agreement and can stand independently without it. Defendants' alleged obligation not to terminate Hays on the basis of his disability does not arise from the Physician Employment Agreement; rather, that obligation flows from and is created by Texas statutory law. *See* TEX. LABOR CODE § 21.051 ("An employer commits an unlawful employment practice if because of . . . disability . . . the employer . . . discharges an individual[.]"). Similarly, Defendants' alleged liability for negligently exacerbating Hays's epilepsy does not arise solely from the Physician Employment Agreement; instead, that duty (if found to exist under the circumstances) would be imposed by the common law. *See, e.g., Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (explaining common-law negligence doctrine). While Defendants maintain "Dr. Hays's suit relies on the terms of his employment contract and seeks to enforce obligations created by that agreement," Defendants never actually explain *how* in their briefing. A mere relationship between the claims and Hays's employment is not enough. *See G.T. Leach*, 458 S.W.3d at 528 (rejecting argument that nonsignatory subcontractors could compel signatory to arbitrate based on general contract because "the work [the subcontractors] performed was necessary only because of the general contract").

Nor does Defendants' alleged liability for breach of contract depend on the existence of the Physician Employment Agreement.   Indeed, the "contract" Defendants allegedly breached is an entirely different document—the HCA Code of Conduct.  It appears to the Court that Defendants' fundamental complaint concerning this cause of action is that it fails on substantive grounds: Defendants argue there is no private cause of action for the violation of a corporate Code of Conduct, as employee handbooks do not create "a separate standard of care" and cannot give rise to direct liability.  *See* Mot. Compel [#21] at 10–11.  Although the Court is highly skeptical of Hays's contention the Code of Conduct is contractual in nature, *see, e.g.*, *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 585–86 (Tex. App.—Fort Worth 2005, no pet.) (collecting cases) ("There is a 'generalized rejection [by Texas courts] of the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine." (quoting *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198 (5th Cir. 1987)), Hays has directed the Court to case law suggesting, at least in certain limited circumstances, that an employee handbook can contractually modify an at-will employment relationship.  *See, e.g.*, *Vida v. El Paso Emp'ees' Fed. Credit Union*, 885 S.W.2d 177, 181 (Tex. App.—El Paso 1994) (finding at-will relationship can be modified by a handbook that "restrict[s] the at-will relationship in a *meaningful* and *special* way").  Hays's citations presume the existence of an employment relationship, however, and the question whether Defendants employ Hays[6] is inappropriate for resolution at this stage of the proceedings.

---

[6] The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997) (citing *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1102 (5th Cir. 1973) (corporate form is not disregarded lightly since the law created corporations primarily to allow limited liability)).  Common management and ownership are ordinary aspects of a parent-subsidiary relationship, and a parent corporation that holds a controlling interest in its subsidiary is entitled to the "normal incidents of stock ownership, such as the right to . . . set general policies, without forfeiting the protection of limited liability." *Id.* (citing *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 180–81 (5th Cir. 1981)).

In any event, whether or not Hays's breach-of-contract claim is ultimately determined to have merit is irrelevant to the question whether it must be sent to arbitration under Defendants' direct-benefits estoppel theory.  At present, the Court determines only that because Hays sues on the Code of Conduct, his breach-of-contract claim does not seek a direct benefit of the Physician Employment Agreement; direct-benefits estoppel, therefore, does not apply to this cause of action under Texas law.

Hays's "tortious interference with at-will employment" claim, however, is another matter. Pled in the alternative, Hays states this cause of action should apply only if Defendants are not found to be his employers; thus, the purportedly "at-will employment" with which Defendants allegedly interfered is Hays's employment relationship with Austin Heart and CAC.  The problem is that Hays appears to have used "at-will employment" as a shorthand for "non-contractual employment"—but the existence of an employment contract does not preclude an employment relationship from being "at will" under Texas law.  *See, e.g., C.S.C.S., Inc. v. Carter*, 129 S.W.3d 584, 591 (Tex. App.—Dallas 2003, no pet.) ("A contract of employment for a term may still be at-will if the agreement allows termination for any reason.").  Consequently, the viability of this cause of action will depend not only on whether Defendants are in fact Hays's employers, but also on whether Hays's employment relationship with Austin Heart and CAC was at-will.  Consequently, Defendants' liability under this cause of action cannot be determined without reference to the Physician Employment Agreement, and Hays must arbitrate this claim.

**B.     "Intertwined-Claims" Estoppel**

In addition to raising argument sounding in the direct-benefits theory, Defendants' briefing suggests the intertwined-claims, or "close relationship," theory should apply to estop Hays from

avoiding arbitration.  *See* Mot. Compel [#21] ¶¶ 33–36 (arguing Hays raises the same causes of

action against Defendants he has raised against Austin Heart and CAC and fails to distinguish any

operative conduct by Defendants as opposed to Austin Heart and CAC).  As noted above, in

considering various theories of equitable estoppel applied by the federal courts in the context of

motions to compel arbitration brought against signatory plaintiffs, while the Texas Supreme Court

rejected "concerted-misconduct" estoppel, the Court strongly implied "intertwined-claims" estoppel,

at least where the nonsignatory defendant has a "close relationship" with the signatory and the

underlying contract, is a viable theory under Texas law.  *See Merrill Lynch*, 235 S.W.3d at 193–94.

As the *Merrill Lynch* court explained:

> It is true that other federal circuit courts have estopped signatory plaintiffs from
> avoiding arbitration with nonsignatories using an "intertwined-claims" test.  For
> example, the Second Circuit has compelled arbitration when a nonsignatory
> defendant has a "close relationship" with one of the signatories and the claims are
> "intimately founded in and intertwined with the underlying contract obligations."
> But the "close relationship" requirement has generally limited this exception to
> instances of strategic pleading by a signatory who, in lieu of suing the other party for
> breach, instead sues that party's nonsignatory principals or agents for pulling the
> strings. . . .  [A]llowing litigation to proceed that is in substance against a signatory
> though in form against a nonsignatory would allow indirectly what cannot be done
> directly.  By contrast, the concerted-misconduct test has no "close relationship"
> component, and would sweep independent entities and even complete strangers into
> arbitration agreements.

*Id.* (footnotes omitted) (collecting cases for the proposition the "close relationship" requirement

limits the intertwined-claims exception to instances of strategic pleading, including *JLM Industries,*

*Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)); *see also Cotton Commercial USA, Inc.*

*v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 105 (Tex. App.—Houston [14th Dist.] 2012, no

pet.) ("[T]he Texas Supreme Court recognizes an 'intertwined-claims' test that has been applied by

other courts in circumstances where a nonsignatory defendant has a 'close relationship' with one of

the signatories . . . . By this exception, the court rejected 'strategic pleading' to avoid arbitration."); *In re Banc One Inv. Advisors Corp.*, No. 01-07-01021-CV, 2008 WL 340507, at *2 (Tex. App.—Houston [1st Dist.] Feb. 7, 2008, no pet.) (indicating "close relationship" is "a test distinct from concerted misconduct").

The Court finds Defendants may compel Hays to arbitrate his TCHRA, negligence, and breach-of-contract claims against Defendants under this "close relationship" test, as Hays treats Austin Heart, CAC, and Defendants as a single unit in its pleadings. *See JLM Indus.*, 387 F.3d at 177 (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)) (noting the *Smith/Enron* claimant was estopped from resisting arbitration where it treated nonsignatory companies and their signatory assignees "as a single unit" in its pleadings). Hays raises virtually indistinguishable factual allegations against Defendants, Austin Heart, and CAC in his complaint in this action and counter-demand in the Arbitration, respectively. Hays's counter-demand, for example, alleges "[d]espite Austin Heart's knowledge of [Hays's] epilepsy and its trigger, between 2011 and 2013, Dr. Hays suffered from stress-producing, anti-professional behavior and failures to accommodate his epilepsy . . . . Dr. Hays notified Counter-Respondents about the need to limit his workload and time in the office, but these requests were ignored[.]" Mot. Dismiss [#21-5] Ex. 5 (First Am. Answer & Counter-Demand) at 9 ¶ 6. Hays's complaint uses precisely the same language, except that "Austin Heart" is replaced with "Defendants" and "Counter-Respondents" is replaced with "Defendants and/or their agents and affiliates[.]" *See* Second Am. Compl. [#20] ¶ 11. In fact, Hays replaces "Austin Heart" and "Counter-Respondents" with "Defendants" or Defendants' "agents and representatives" in virtually all the allegations regarding the operative facts of his claims. *Compare* First Am. Answer &

-14-

Counter-Demand at 9–10 ¶¶ 3, 6–10 ("Based on Counter-Respondents' conduct . . . . Yet Counter-Respondents took no actions . . . . Counter-Respondents, apparently tired of having to accommodate Dr. Hays's epilepsy, disregarded the physical and mental signs and put him on administrative leave . . . . Counter-Respondents added insult to injury by terminating Dr. Hays due to his epilepsy . . . ."), *with* Second Am. Compl. [#20] ¶¶ 8, 11–15 ("Based on Defendants' conduct, and the conduct of their agents and representatives . . . . Yet Defendants took no actions . . . . Defendants, apparently tired of having to accommodate Dr. Hays's epilepsy, disregarded the physical and mental signs of his seizure activity and put him on administrative leave . . . . Defendants added insult to injury by terminating Dr. Hays due to his epilepsy . . . ."). In short, by failing to differentiate his factual allegations against Defendants from those against Austin Heart and CAC—all of which are affiliates connected to Hays's former cardiology practice—Hays has treated all of those entities as closely related but engaged in creative and strategic pleading to avoid the arbitral forum. Under Texas law, he may not do so. *See Merrill Lynch*, 235 S.W.3d at 193–94.

Accordingly, as Hays does not argue his claims fall outside the scope of the arbitration clause in the Physician Employment Agreement, or that any external legal constraints foreclose arbitration of his claims, the Court concludes Defendants' motion should be granted, and Hays compelled to arbitrate. The Court further notes were any of Hays's claims not subject to equitable estoppel, it would in any event stay the litigation pending the outcome of the Arbitration. As Defendants correctly note, Hays is entitled to only one recovery for his claims arising out of the same operative facts, and the Court would have no way of ascertaining damages without knowing the result of the Arbitration.

-15-

Having found all of Hays's claims subject to arbitration, the final question for this Court is whether to stay this case or dismiss it with prejudice. The Federal Arbitration Act explicitly contemplates stays pending arbitration. *See* 9 U.S.C. § 3. But the Fifth Circuit has interpreted the FAA as authorizing "dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (collecting cases and affirming dismissal with prejudice). As all of Hays's claims are arbitrable, the Court concludes dismissal with prejudice is proper. Once the parties have arbitrated their claims, they may apply to a proper court for entry of a judgment upon the award made pursuant to the arbitration. *See* 9 U.S.C. § 9.

## Conclusion

Accordingly:

IT IS ORDERED that Defendants HCA Holdings, Inc. and HCA Physician Services, Inc.'s Opposed Amended Motion to Dismiss and Compel Submission to Pending Arbitration, or, in the Alternative, to Stay This Litigation [#21] is GRANTED. The parties are ordered to arbitrate their claims in the manner provided for in the arbitration agreement, pursuant to 9 U.S.C. § 4;

IT IS FURTHER ORDERED that all claims brought in this case by Plaintiff John T. Hays, M.D. are DISMISSED WITH PREJUDICE. The Court's dismissal does not affect the ability of either party to apply to any appropriate court for entry of a judgment upon an arbitration award; and

IT IS FINALLY ORDERED that Plaintiff John T. Hays, M.D.'s Motion for Leave to File Sur Reply [#26] is GRANTED.

SIGNED this the 29ᵗʰ day of September 2015.

_Bam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE